**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **ROGER M. SMITH,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:13-15029** |
| | ) | |
| **CAROLYN. W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered June 24, 2013 (Document No. 4.), this

case was referred to the undersigned United States Magistrate Judge to consider the pleadings and

evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant

to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for

Judgment on the Pleadings. (Document Nos. 8 and 9.)

The Plaintiff, Roger M. Smith (hereinafter referred to as "Claimant"), filed an application for

DIB on October 23, 2009 (protective filing date), alleging disability as of June 15, 2009, due to "a back

condition, shortness of breath, left knee locks up, and possible arthritis."[1] (Tr. at 12, 146-49, 163, 191.)

The claim was denied initially and upon reconsideration.[2] (Tr. at 64-65, 78-80, 84-86.) On May 20,

2010, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 87-88.) A

hearing was held on October 18, 2011, before the Honorable M. Hart. (Tr. at 29-54.)  By decision

---

[1] Claimant's application for SSI, filed on October 23, 2009, was denied on November 11, 2009,
because he had too much income to be eligible for SSI. (Tr. at 68-77.)

[2] On his form Disability Report - Appeal, Claimant alleged anxiety and depression as
additional disabling impairments. (Tr. at 202.)

dated December 28, 2011, ALJ Geraldine H. Page determined that Claimant was not entitled to benefits. (Tr. at 12-23.) The ALJ's decision became the final decision of the Commissioner on April 24, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on June 20, 2013, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) & § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining

physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of

decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph © of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, June 15, 2009. (Tr. at 14, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "breathing problems diagnosed as chronic obstructive pulmonary disease (COPD) and bronchitis (x-ray for pneumoconiosis was negative) and evidence of right peripheral pleural thickening (Exhibit 15F).; arthralgias in the back shoulder, knees, and hip; mild history of trauma, and degenerative changes in the lumbar spine," which were severe impairments. (Tr. at 14, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> Specifically, the [C]laimant can lift and/or carry no more than 50 pounds occasionally and 25 pounds frequently; can stand and/or walk no more than six hours and sit for no more than six hours in an eight-hour workday; can occasionally climb ramps and stairs, balance, kneel, crawl, stoop, and crouch; can frequently reach overhead with left upper extremity; should avoid concentrated exposure to extreme temperature and excess humidity, pollutants, and irritants; and cannot perform work around hazardous machinery, unprotected heights, climbing ladders, ropes, or scaffolds or on vibrating surfaces

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that Claimant was unable to return to his past relevant work. (Tr. at 21, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a

stock clerk/order filler, mold assembler, and packer, all medium and unskilled jobs. (Tr. at 22-23, Finding No. 10.) On this basis, benefits were denied. (Tr. at 23, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 31, 1952, and was 59 years old at the time of the administrative hearing on October 18, 2011. (Tr. at 22, 32, 34, 146.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 22, 32, 34, 190.) In the past, he worked in the underground coal mining industry as a foreman and a miner. (Tr. at 21, 32, 34, 47-48, 182-83, 191-93.)

 The Medical Record

      The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

      Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's RFC and according little weight to Ms. Rhodes's opinion. (Document No. 8 at 5-6.) Claimant asserts that the ALJ improperly assigned greater weight to the opinions of the state agency physicians, whose opinions were rendered more than a year prior to the ALJ's decision. (Id. at 6.) These physicians did not have the benefit of reviewing Claimant's treating provider's opinion who opined that he was totally disabled. (Id.) Accordingly, Claimant contends that the ALJ's decision that he could perform a range of medium work is not supported by the substantial evidence of record. (Id.)

      In response, the Commissioner asserts that Claimant's argument is without merit and that the ALJ thoroughly considered all evidence of record, including Ms. Rhodes's opinion, and formulated an RFC that accommodated his credibly established functional limitations. (Document No. 9 at 8-9.) The Commissioner asserts that the ALJ properly gave little weight to Ms. Rhodes's opinion first, because as a physician's assistant, she was not an acceptable medical source under the Regulations. (Id. at 9.) Second, the Commissioner asserts that Ms. Rhodes improperly based her assessment solely on Claimant's subjective complaints. (Id. at 9-10.) Third, and finally, the Commissioner asserts that the record revealed inconsistencies between Claimant's stated limitations to Ms. Rhodes and the objective medical findings. (Id. at 10-11.) Furthermore, the Commissioner notes that Claimant's treatment for his pain was conservative and consisted of Aspirin and the Commissioner noted that Claimant refused recommended injections. (Id. at 11.) Additionally, Claimant did not seek treatment for his alleged left knee, hip, shoulder, or lower back pain since his x-rays were taken in October 2009.

(Id.) The Commissioner further notes that Claimant's reported activities of daily living supported the ALJ's RFC. (Id.) Finally, the Commissioner asserts that the ALJ's RFC assessment is supported by the opinions of the two state agency physicians. (Id. at 12.) Accordingly, the Commissioner contends that the ALJ appropriately weighed all the medical evidence and fully accommodated Claimant's functional limitations in her RFC assessment. (Id.)

Analysis.

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity

> . . . or the application of vocational factors, the final responsibility for deciding these
> issues is reserved to the Commissioner.

See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2011).

> In determining what a claimant can do despite his limitations, the SSA must consider
> the entire record, including all relevant medical and nonmedical evidence, such as a
> claimant's own statement of what he or she is able or unable to do.  That is, the SSA
> need not accept only physicians' opinions.  In fact, if conflicting medical evidence is
> present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in

the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather,

they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and  416.927(e).

For that reason, the Regulations make clear that "[w]e will not give any special significance to the

source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and

416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge

hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests

with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946

(2012). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d)

when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social

Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the

adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical

source statement,' which is a 'statement about what you can still do despite your impairment(s)' made

by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p

states that "[a] medical source statement is evidence that is submitted to SSA by an individual's

9

medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

The medical evidence reveals that respecting Claimant's breathing problems, he established an initial visit at Blue Ridge Internal Medicine on March 16, 2007, and was diagnosed with chronic bronchitis/COPD. (Tr. at 18, 270.) He was instructed to continue using his inhaler, Proventil. (Id.) A chest x-ray on October 26, 2009, demonstrated right peripheral pleural thickening. (Tr. at 18, 373.) On follow-up examination on January 15, 2010, Claimant indicated that overall, he felt well, and examination of his joints, extremities, and musculoskeletal system was within normal limits. (Tr. at 18, 322-23.)

Dr. Gary Craft, M.D., conducted a bronchial spasm study on March 22, 2010, which revealed only a moderate obstructive defect. (Tr. at 18, 334-38.)

Claimant initiated treatment at the Bluestone Health Clinic on October 21, 2009, for complaints of left shoulder pain, back pain, left hip pain, and left knee pain. (Tr. at 18, 377.) Ruth Rhodes, Physician's Assistant, noted on exam some left shoulder tenderness, but noted that he had full range of motion. (Id.) He had full range of left hip motion, some tenderness over the left SSI joint but nothing significant, and full range of left knee motion from 60 to 180 degrees. (Id.) He was fully ambulatory without limp. (Id.) Ms. Rhodes suggested SI joint and left shoulder injections but Claimant declined and stated that the pain was not that severe. (Id.) She ordered x-rays. (Id.) The x-rays of his left knee indicated some mild deformity that could have been from trauma of indeterminate age. (Tr. at 376, 422.) The x-rays of his left hip and pelvis and left shoulder were normal. (Tr. at 376, 423-24.) The x-

10

ray of Claimant's lumbar spine revealed mild degenerative changes with disc space narrowing, sclerotic endplates, and spur formation most marked at L2-L3. (Tr. at 18, 376, 425.)

Claimant returned to Bluestone Health Center on October 30, 2009, for follow-up, and was seen by Jessica Hall, FNP. (Tr. at 18, 296.) On exam, Ms. Hall noted some crepitus of the left shoulder and knee. (Id.) Claimant declined a MRI as the pain was tolerable at the time. (Id.)

Claimant returned to Bluestone nearly one year later, when he presented on September 7, 2010, with complaints of his left foot being swollen. (Tr. at 18, 375.) Ms. Rhodes assessed probable gout of the left great toe and gave him an injection of Decadron 8mg. (Id.) She prescribed Indocin 50mg. (Id.) Claimant did not return to the clinic until almost a year later when he was seen on August 30, 2011, by Ms. Rhodes for complaints of gout and left knee pain. (Tr. at 548.) No abnormal physical findings were noted. (Tr. at 548-49.)

Records from Princeton Community Hospital indicate that Claimant was admitted on July 30, 2011, for extensive swelling of the right lower extremity. (Tr. at 19, 481-88.) He most likely had an infection caused by gout, and after treatment, the swelling went down. (Id.) He was discharged on August 5, 2011, and ambulated without a cane. (Tr. 19, 483.) On September 1, 2011, Dr. Remines, D.O., an orthopedic specialist, indicated that his symptoms had resolved. (Tr. at 19, 550.)

On January 25, 2010, Dr. Rabah Boukhemis, M.D., a state agency reviewing physician, completed a form Physical RFC Assessment on which he opined that Claimant was capable of performing medium exertional level work with an avoidance of concentrated exposure to temperature extremes, humidity, vibration, environmental irritants, and hazards. (Tr. at 20-21, 325-32.) Dr. Boukhemis noted that Claimant's degenerative joint disease was very mild and while he had COPD, there was no evidence of significant exacerbations. (Tr. at 20-21, 330.)

On April 9, 2010, Dr. Marcel Lambrechts, M.D., a state agency reviewing physician,

completed a further form RFC Assessment on which he, too, determined that Claimant could perform medium exertional level work. (Tr. at 20-21, 348-55.) Dr. Lambrechts, however, assessed frequent postural limitations with the exception that he occasionally climb ladders, ropes, and scaffolds. (Tr. at 350.) He did not assess any manipulative limitations and noted that although Claimant had some crepitus in the left shoulder, it did not seem severe. (Tr. at 351.) Finally, he opined that Claimant should avoid concentrated exposure to vibration and hazards. (Tr. at 352.)

The ALJ accorded these two opinions some weight as they were supported by the findings upon imaging studies and physical examinations. (Tr. at 20-21.) However, the ALJ determined that the evidence submitted by Claimant at the administrative hearing indicated that he was more limited than assessed by these physicians, and therefore, the ALJ assessed more stringent limitations. (Tr. at 21.)

On August 30, 2011, Ms. Rhodes, completed a form Assessment of Ability to Do Work-Related Activities (Physical), on which she opined that Claimant was capable of lifting no more than ten pounds occasionally due to his gout and hip pain. (Tr. at 21, 544-46.) Ms. Rhodes opined that Claimant could stand, walk, or sit for no more than one hour each day because he stated that he could not stand or walk for long periods and could not sit longer due to back and leg pain. (Tr. at 21, 544-45.) She noted that x-rays of the hip were normal and that lumbar x-rays revealed minimal arthritic changes. (Tr. at 21, 544.) Ms. Rhodes further opined that Claimant could never stoop, kneel, crouch, or crawl; only occasionally climb and balance; and could not push or pull, or operate moving machinery. (Tr. at 21, 545-46.) Ms. Rhodes indicated that "[t]his form is completed based on patient's subjective complaints." (Tr. at 21, 546.) She also indicated that there no medical findings that supported her assessment. (Id.) Ms. Rhodes noted that Claimant's regular primary care physician is Dr. Remines. (Id.) She opined that she anticipated Claimant would miss more than two days a month from work.

12

(Id.)

The ALJ accorded Ms. Rhodes' opinion no weight for several reasons. (Tr. at 21.) First, the ALJ properly determined that Ms. Rhodes was not an acceptable medical source. The Regulations require that ALJs consider all evidence from "acceptable medical sources" including licensed physicians and other providers. 20 C.F.R § 404.1513(a). Physicians' assistants are not "accepted medical sources" but qualify as "other sources" under 20 C.F.R. § 404.1513(d)("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include . . . physicians' assistants. . ..") The rules for evaluating acceptable medical source statements and opinions do not apply, therefore, to statements and opinions of physicians' assistants. ALJs may consider any opinions of physicians' assistants as additional evidence, but they are not required to assign them weight, controlling or otherwise, in their evaluations of evidence. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); Yost v. Barnhart, 79 Fed.Appx. 553, 555 (4th Cir. 2003)(affirming District Judge Chambers' denial of benefits and finding no error in the ALJ's rejection of the opinion of a physical therapist respecting the claimant's physical impairments.). Even though the ALJ considered Ms. Rhodes as an unacceptable medical source, she properly summarized her medical records and opinions and evaluated her opinion.

Second, in determining that Ms. Rhodes' opinion was not entitled any weight, the ALJ noted that she relied almost entirely on Claimant's subjective reports of symptoms and complaints. (Tr. at 21.) As the ALJ emphasizes, Claimant's subjective complaints were not entirely supported by the record. Despite his alleged inability to stand, walk, or sit for extended periods of time, the diagnostic and imaging evidence failed to offer any reasons why he could not. As summarized above, the x-rays

of his hip, pelvis, and shoulder essentially were normal and the x-rays of his knee and back showed minimal arthritic changes. (Tr. at 21.) There were no significant findings on physical examinations and even when diagnosed with gout, his symptoms dissipated with treatment. Claimant denied injections because he stated the pain was not that severe. Furthermore, his treatment was sporadic and not consistent. Though Claimant alleges that Ms. Rhodes essentially was the only "treating" source of record, her opinion was of no benefit to the ALJ because it was not given objectively. Ms. Rhodes boldly stated as much on the face of her opinion. Accordingly, the undersigned finds that the ALJ's decision to give no weight to the opinion of Ms. Rhodes and limited weight to the opinions of Drs. Boukhemis and Lambrechts is supported by the substantial evidence of record and the ALJ properly determined Claimant's RFC.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 8.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 9.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.

Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.   Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 29, 2014.

R. Clarke VanDervort
United States Magistrate Judge